Present:    All the Justices

WALTER C. COOLEY
                              OPINION BY JUSTICE LEROY R. HASSELL, SR.
v.  Record No. 981313              April 16, 1999

TYSON FOODS, INC., A NORTH
CAROLINA CORPORATION

              FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                       James B. Wilkinson, Judge

     In this appeal we consider whether a discharged employee

presented sufficient evidence to support a jury's finding that

he was fired by his former employer because he had intended to

file a workers' compensation claim.

     Walter C. Cooley filed a motion for judgment against

Tyson Foods, Inc., and its personnel manager, Leonard Parks.

Cooley, relying upon Code § 65.2-308[*], alleged that he was

terminated solely because he intended to file a claim under

_____

     [*] Code § 65.2-308 states in part:

          "A.  No employer or person shall discharge an
     employee solely because the employee intends to file
     or has filed a claim under this title or has
     testified or is about to testify in any proceeding
     under this title.  The discharge of a person who has
     filed a fraudulent claim is not a violation of this
     section.
          "B.  The employee may bring an action in a
     circuit court having jurisdiction over the employer
     or person who allegedly discharged the employee in
     violation of this section.  The court shall have
     jurisdiction, for cause shown, to restrain
     violations and order appropriate relief, including
     actual damages and attorney's fees to successful
     claimants and the rehiring or reinstatement of the

the Virginia Workers' Compensation Act.  Cooley nonsuited his claim against Parks and at a trial, the jury returned a verdict in favor of Cooley in the amount of $36,450.  The circuit court granted Tyson Foods' motion to set aside the jury's verdict.  The circuit court held that Cooley failed to prove that he had intended to file a workers' compensation claim and that Cooley failed to establish that Tyson Foods had discharged him solely because he had intended to file such claim.  Cooley appeals.

Even though the circuit court set aside the jury's verdict, we accord the recipient of a jury verdict the benefit of all substantial conflicts in the evidence and all reasonable inferences which may be drawn therefrom. Therefore, we will state the facts in the light most favorable to Cooley, and if there is any credible evidence in the record which supports the jury's verdict, we will reinstate that verdict and enter judgment thereon.  Holland v. Shively, 243 Va. 308, 309-10, 415 S.E.2d 222, 223 (1992).

Cooley had been employed with Tyson Foods for approximately 29 years.  On August 5, 1996, Dr. Brenda Ray, Cooley's personal physician, examined him for urological problems.  During that examination, Cooley asked Dr. Ray to

employee, with back pay plus interest at the
judgment rate . . . ."

2

examine his back.  According to Cooley, Dr. Ray examined his back and found nothing wrong with him.

The next day while working at a Tyson Foods' facility, Cooley experienced a "bad pain in [his] back" when he tried to place a cart upon a table while performing his duties as a maintenance mechanic.  Cooley was transported to the medical department where Pat Gasque, Tyson Foods' supervising nurse, obtained his medical history.  While Gasque was completing a form described as an "injured workers' statement," she asked Cooley:  "Have you recently or in the past injured yourself off the job?"  Cooley responded, "no."  Gasque recorded Cooley's response on the form and Cooley signed it.

Gasque made arrangements for Cooley to be taken to a hospital's emergency room because he continued to experience pain.  After the emergency room personnel treated Cooley, he returned to Tyson Foods' facility.

When Cooley arrived at work the next day, Gasque referred him to Dr. Douglas A. Wayne, a physician who practices physical medicine and rehabilitation.  Dr. Wayne performed an evaluation of Cooley and determined that he was experiencing pain on the left side and back of his body.  Dr. Wayne also took a medical history from Cooley.

After conducting this physical examination, Dr. Wayne decided to contact Dr. Ray to discuss Cooley's medical

3

condition. During a telephone conversation, Dr. Ray informed Dr. Wayne that Cooley had been to see her on August 5, 1996, and that he complained about "left side back pains, very similar" to the conditions that he had described to Dr. Wayne. Dr. Ray further advised Dr. Wayne that Cooley had informed her that he hurt his back when he had "been hit hard by some waves" at a beach on August 4, 1996. When Dr. Wayne informed Cooley that Dr. Ray stated that Cooley had been injured on August 4, Cooley did not respond. "He didn't say anything."

Gasque, who had accompanied Cooley to Dr. Wayne's office, learned that Dr. Ray had treated Cooley for a back injury he incurred at a beach. She conveyed this information to Parks, who suspended Cooley from work and conducted an investigation. Parks obtained a letter that Dr. Wayne had written to Gasque which stated, in pertinent part: "After Mr. Cooley was seen I contacted Dr. Ray to discuss the situation and to see if she could see him soon. It was at that time that she relayed that Mr. Cooley had been in her office two days ago complaining of left side and back pain. He gave her the history that he had hurt himself at the beach over the weekend and had been hit hard by waves and had banged his flank and back into the sand."

Parks also obtained Dr. Ray's notes which indicate that Cooley had injured his back on August 4, 1996. Parks reviewed

4

medical records that Dr. Wayne and Dr. Ray had forwarded to him and decided to terminate Cooley's employment because he had made a false statement that he had not been injured "recently or in the past . . . off the job."

Code § 65.2-308 requires that Cooley present evidence which establishes that he was terminated solely because he had intended to file a workers' compensation claim. Cooley, relying upon Charlton v. Craddock-Terry Shoe Corp., 235 Va. 485, 369 S.E.2d 175 (1988), argues that he presented sufficient evidence to meet this statutory requisite. Tyson Foods asserts that Cooley failed to establish by a preponderance of the evidence that he was fired solely because he intended to file a workers' compensation claim. We agree with Tyson Foods.

In Charlton, we considered whether the evidence supported a jury's verdict finding that an employee had been discharged because she had incurred a work-related injury or disease for which she had intended to file a claim under the Virginia Workers' Compensation Act. The plaintiff developed tendonitis in her right hand caused by the performance of her assigned duties. The plaintiff received an award of workers' compensation benefits for lost wages and the cost of medical treatment. Subsequently, the plaintiff was required to leave work and seek treatment for pain in the same hand at the

5

emergency room of a hospital. 235 Va. at 487, 369 S.E.2d at 176.

When the plaintiff returned to work, she was summoned to a meeting, and the defendant required her to sign a form which waived her right to claim compensation benefits related to certain physical conditions. Id. The plaintiff declined to sign the form because she did not understand it. 235 Va. at 488, 369 S.E.2d at 176. Later, the defendant informed the plaintiff that if she persisted in her refusal to sign the waiver form, she would be terminated. The plaintiff signed the form and delivered it to her employer, who forwarded the form for approval to the Workers' Compensation Commission. The plaintiff then retained counsel who withdrew the waiver, and the Workers' Compensation Commission advised the defendant that the Commission would not approve the waiver. Id. The defendant fired the plaintiff four days before the plaintiff's attorney had withdrawn the waiver and six days before the Commission refused to approve the waiver. 235 Va. at 490, 369 S.E.2d at 177-78.

During cross-examination, the plaintiff stated that she was fired because she had refused to sign a waiver of her right to claim workers' compensation benefits. 235 Va. at 488, 369 S.E.2d at 177. Relying upon this testimony, the defendant argued that the plaintiff's evidence showed that she

was not fired solely because she intended to file a workers' compensation claim and that her refusal to sign the waiver constituted a separate reason for her dismissal. 235 Va. at 488-89, 369 S.E.2d at 177. Rejecting the defendant's contentions, we held that the record in Charlton revealed that the defendant's motivation for terminating the plaintiff was a matter outside the realm of her knowledge and that the evidence when considered in its entirety supported the jury's finding that the plaintiff was discharged solely because she had intended to file a workers' compensation claim. 235 Va. at 490, 369 S.E.2d at 177-78. See also Mullins v. Virginia Lutheran Homes, 253 Va. 116, 119-20, 479 S.E.2d 530, 532-33 (1997).

Here, unlike Charlton, the evidence of record reveals that Cooley failed to prove by a preponderance of the evidence that Tyson Foods fired him solely because he intended to file a workers' compensation claim. The evidence of record clearly establishes that Tyson Foods, which had conducted a thorough investigation, was entitled to conclude, based upon the facts it adduced during that investigation, that Cooley had made a false representation to Tyson Foods. Thus, Tyson Foods had a legitimate non-pretextual reason to terminate Cooley which cannot subject Tyson Foods to liability under Code § 65.2-308.

Accordingly, we will affirm the judgment of the circuit court.

<u>Affirmed</u>.